All rise. All rise. Good morning. We are convened to hear argument in the case of United States of America v. Jose Francisco Reyna-Tapia. Judge Kleinfeld is unable to travel, and so he is with us by phone. Judge Kleinfeld, can you hear us? I can hear you fine. Very good. All right. All counsel are present, and so the appellant may proceed. Good morning, Your Honor. My name is Atmar Baggett, representing the appellant, Mr. Reyna-Tapia. Your Honor, one of the most basic rules of statutory construction is that the court must give effect to every word that Congress uses, every phrase, every sentence, that nothing may be ignored. Basically, when Congress says something, it means something. Section 1326 criminalizes the reentry of a removed alien, but there are two unless clauses under which the act is not criminal. Number one is A, which is the express consent of the attorney general. That doesn't apply in this case. Mr. Reyna-Tapia didn't have it. However, Section B is very important. It says unless such alien can establish that he was not required to obtain such advanced consent under this chapter or any prior act. The plain meaning of that unless clause is that there may be certain circumstances under which a person is deported but still may return without the express consent of the attorney general under a prior act. Statutes must be read in peri materia, which is simply a simple way of saying that when different statutes cover the same subject matter, they must all be considered together. The definition of what an order of deportation is appears in the definition section, which is 1101A.47, big A, and says nothing about the changing of status or revoking any prior permission to reenter under a prior act. It simply says that an order of deportation is an order concluding the alien is deportable or ordering deportation. And that's exactly what orders of deportation do. They don't even purport to change the status of an alien. What they do is order that alien X be transported to the border and released to his native country, in this case Mexico. It doesn't say a word about changing the status. It's not a continuing injunction. The subject of a change of status isn't even discussed normally. It doesn't have to be discussed in a deportation proceeding. Another statute which governs the same subject matter is 8 U.S.C. 1256, which is the way an alien who is in this country has obtained status to stay here under 1255, and the Attorney General discovers he wasn't eligible in the first place. Section 1256 contains a provision that an order of removal issued by an immigration judge shall be sufficient to rescind the alien's status. Now, Mr. Raina Tapia was not under that because the limitation is five years, and he was eligible for status change to legal permanent residence when he obtained it. His problems with the law occurred after the change of status. We submit when the Court looks at those three statutes, which all deal with the same subject matter, that the intent of Congress was that certain statuses would continue beyond the order of deportation subject to adjustment by INS, or whatever they call it now, BICE. Counsel, in your view, then, what is the import of our decision, such as Ferrohi versus INS, where we say that the permanent residence status terminates once the board renders its opinion regarding the deportation issue? That wasn't a criminal case. This is a criminal's. What you're being asked to do here, Your Honor, is interpret a criminal statute. That was not a criminal case. That was an administrative matter versus the INS. So in your view, this ruling doesn't apply because this is a criminal case? It doesn't apply because the Court is being asked to interpret a criminal statute. That didn't interpret a criminal statute. Our prisons are filling up with these immigrants returning deported felons, but the Court has to look at it. Does Congress really intend to put all those people in incarceration where they might have had a status? That has never been changed. Our trouble with the panel decision, Your Honor, is that it just doesn't apply. The broom just sweeps too much out of the room. Looking at those three statutes, they all deal with the same subject matter, that our position is that this alien status continued until adjusted, and it was never adjusted. So he had the right. He didn't violate the statute because he had the advanced consent of the Attorney General under a prior act, which was amnesty in his case. There could have been others. I would like to address the subject of the magistrate's change of plea, because that is a proceeding which is very common in Phoenix, as well as other places along the border, due to the huge wave of immigration cases, including this one. We submit that in 1967, Congress created the Office of Magistrate beginning at 28 U.S.C. 631. It defines who can be a magistrate, who can't be a magistrate, and so forth. The jurisdiction and powers of the magistrates were addressed in Section 636, and certain topics or certain subject matter may be dealt with by a magistrate without anything. But what we're concerned with here is the other clause, the catch-all, and whether a change of plea is authorized by Congress, whether a magistrate has jurisdiction to do it. We submit that the section that is really the most important in this case, the most important is Section 636.4, which follows the additional duties clause in 3. It says that each district court shall establish rules pursuant to which the magistrate shall discharge the duties. Now, here, there was no court rule. Despite this practice being very widespread and occurring every day of the week multiple times, there is no rule of the court in any form that authorizes the magistrates to perform changes of plea. Counsel, what about Section 3 that says a magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States? Why wouldn't that sanction the assignment to the magistrate judge? Well, it does, but it has to be read with the following paragraph together, which is Paragraph 4, which, as I said, is that the district court shall establish rules. The district court did not establish rules for assignment of these cases to the magistrate. Section 3, which you mentioned, is an additional limitation on the jurisdiction powers of the magistrate. So I'm a little confused about that argument. If the district court didn't have rules that sent this, the taking of the plea procedure to the magistrate, how did it get there? The judge, it's common practice in our jurisdiction that it's just done, Your Honor. They don't have a formal rule? They don't have formal rules. There's no general order. There's no published rule of the district court. It's just a practice. I think Judge Silberman was one of those whose name is commonly associated with the practice. It's just something that occurred. And our point is that the... Is it an arbitrary thing that's occurred, or is it a consistent thing? Oh, it's very consistent. The district judges, even the hardest court, the most dedicated, just don't have time to do their pleas anymore. And therefore, these changes of plea are virtually all referred to one of our four magistrates. That's exactly it, Mr. Baggett. Isn't there a written referral from the judge to the magistrate judge on a form? Not under the fast track, sir, not at all, because it automatically goes to the judge isn't even assigned until the individual is indicted. But the whole point of fast track is to avoid the indictment. Wasn't there a written order in this case? A written order? No, sir. Was there a written order referring it to Magistrate Memphis? There was no rule of the Court governing this proceed. Answer my question. Was there a written order signed by Chief Judge McNamee referring it to Magistrate Judge Memphis? The answer is yes. Well, it's done after, if there's an indictment, then it's assigned to a district judge. And at that point, there would have to be an order of referral, yes. Did you raise this objection we're making now about the lack of the local rule in district court? No, we didn't. No, this occurred before the panel. You're not even raising it in your brief, do you? Well, I may not. But it is a jurisdictional question. It's an oral argument. Excuse me, sir? I say it's not properly usually to raise a brand-new argument at the oral argument that you didn't raise in the district court or didn't raise in your brief. Well, it was the argument was considered by the panel as to whether the magistrate had jurisdiction to conduct the change. But there's a point that it's invalid because there's no local rule. That specific argument was not raised. The general argument was considered by the panel. No, we didn't. So we can consider the general argument, but not the specific argument. Well, I would say it certainly pertains to the jurisdiction of the magistrates. We submit the Supreme Court decision that is most on point is Matthews v. Weber back in 1976, in which the district court did have a general order referring Social Security benefit cases to a magistrate. And there the Supreme Court referred to this process as a procedure by which the district courts may call upon magistrate judges to perform other functions. And it says that the district courts, by the concurrence of a majority of all its judges, may adopt such plans as it deems fit. Did your client, Mr. Baggett, consented in writing to having McMathis, and with your concurrence? Yes, sir. Even if you're right about the rule, why isn't it harmless error? Because it's a jurisdictional point. The point is that Congress has control of the jurisdiction and powers of the magistrate judge, just like it controls the powers and jurisdiction of any Federal judge. People can't consent to subject matter jurisdiction, no matter how hard they try. But, yes, there is a written consent. We did not object to the magistrate's doing it. As I say, it's harmless error. You consented to having her do it. Yes. And then also, in addition, did not object to her findings. No, we didn't. This issue arose at the panel level on the grounds that this, as I say, is a widespread practice and the Court has never considered whether this procedure is authorized or not. It's a jurisdictional question. Your Honor, the problem, the biggest problem created by the panel decision is what de novo means, because obviously if a district judge has to redo everything, which is what de novo signifies and requires, you're doing the job twice. Rather than cutting, becoming more efficient, it's becoming less efficient. I would like to save a minute or two for rebuttal, if I may. Before you sit down, let me ask you something. Okay. Okay. Thank you. I didn't hear that. Thank you. You may proceed. Thank you, Chief Judge Schroeder, and may it please the Court and counsel, good morning. My name is Michael Rocker. I'm an attorney in the appellate section of the criminal division of the Department of Justice, and I'm here on behalf of the United States. Your Honors, Congress has authorized and the Constitution permits Article III district court judges to entrust their magistrate adjuncts with the responsibility for administering the Rule 11 plea colloquy in a felony case with the defendant's consent. Now, I'd like to begin by addressing some of the issues relating to the statutory question that is the scope of the additional duties clause. And then, if I may, turn to the constitutional issue and the related question about de novo review. At the outset, we fully concur in the panel's conclusion that with consent, the duty of administering a Rule 11 plea colloquy in a felony case is delegable to a magistrate under the additional duties clause, because that responsibility Counsel, the problem then is footnote 7 in the panel? Yes. Yes. But except for footnote 7, the rest of the opinion is acceptable? Footnote 7 bears on the de novo review and the constitutional question. I wouldn't say we agree with the panel's conclusion on the statutory question, but there were some concerns that were expressed by the panel regarding the statutory question and the propriety of delegating this function. In our view, although we appreciate and are quite sensitive to those concerns, we think that there are adequate responses, and we think that a decision that would clear the air over the legitimacy of this practice would be beneficial. And that's the issue that I'd like to turn to, is to address and comment on some of those concerns on the statutory question. Now, the first concern identified by the panel was the one question I had was, given that there was de novo review in this case, is footnote 7 an issue of what it addresses even necessary to the decision? I thought about that question, Your Honor. I don't know the answer to it. But the concern that we had, though, was that to the extent that footnote 7, there was de novo review in this case, but it wasn't because Judge McNamee was required to do so. There was no objection that triggered that obligation. Judge McNamee said there was de novo review, but what do you think that means in this case? What do you think he did? Well, what I think he did, Your Honor, is he had a transcript? No. He didn't have the transcript, but that's the point. Did he have a finding? What did he do? What does that mean? Well, here's what I can infer that he did. Here's what the record reflects. Number one, he had the magistrate's findings, and there were no objections. He knew there was an opportunity. Number two, what this Court has said in its case law regarding the meaning of a de novo determination under 636 is that the district court must have before it either the transcript of the proceeding or a tape recording of the proceeding. And in Arizona, as a standard practice, this plea colloquy in this case, again, as is consistent, was recorded by something known as an electronic court reporter, which is a slightly sophisticated version of an audio recording. Now, there's no – nothing in the docket that would specifically indicate what judge – that Judge McNamee actually reviewed the tape. It's lodged with the clerk's office. It's certainly available to the district court should he wish to have it. But I think we can fairly infer, and we can take Judge McNamee's statement at face value, that if he said he did a de novo review, presumably he listened to the tape recording, he considered the magistrate's findings, and then he drew his own conclusion. So you think we should – we should infer that much from the judge's statement that he conducted the de novo review? I would say this, Your Honor. I think at the very least, Judge McNamee is entitled to a presumption of regularity, and in the absence of any evidence to refute that, I think that that presumption would be enough to carry the day here. Counsel, subsequently, he had a transcript at the time that they tried to withdraw the plea. I don't believe – my understanding, Your Honor, is that the transcript itself was actually prepared in connection with the appeal. It was not prepared in connection with the motion to withdraw. I may be incorrect on that. I would defer – yeah, as Mr. Baggett has confirmed. So the transcript was prepared only for the appellate proceedings. Now, again, the first concern identified by the panel in this case was that allowing magistrates to perform the function of a felony plea colloquy is impermissible because it is the functional equivalent of allowing a magistrate to preside at a felony trial, and Congress has not given magistrates authority to do – to preside at a felony trial. Now, we agree that Congress has not given that trial authority to the magistrates, and we've – the government has taken that position since the Gomez decision in the Supreme Court. But it doesn't follow that plea colloquies are outside the bounds of the magistrate's authority because there are some important differences between the two types of proceedings. Now, at the outset, we recognize, and we – and I think everybody would recognize that a plea proceeding is an important stage of a criminal proceeding. It's a solemn act that's being done by the defendant, and it reflects the severity he's admitting to his guilt to a crime. But at the same time, the proceeding is inherently non-adversarial. The defendant's interests are largely aligned with those of the government in contrast to a trial where the defendant is putting the government to its burden of proof and it's an inherently adversarial proceeding. That is one distinction. Well, however, it's very important that the judge determine that, in fact, the crime was committed and that all of the statutory requirements are met. Absolutely, Your Honor. And that sort of bears on the second distinction I was going to proffer, which is that a judge's responsibility at a plea colloquy is largely constrained and guided by Rule 11 itself, whereas a judge at trial, as Your Honor noted in the panel decision, exercises substantial discretion to rule on a broad range of issues. And I will turn to the point, which I think Your Honor is alluding to, about the factual basis in a moment, but I want to just conclude. Turn to that right now. Okay. Okay, Your Honor. In our view, the Court's concern, as I understand it, was that allowing a magistrate to find the factual basis would dilute the importance of that safeguard to the defendant. But we don't think, given the layers of protection and the procedures and the structures that are in place, we don't think that that is really a concern that's going to manifest itself. And let me explain why. Allowing a competent, duly authorized and qualified magistrate judge to make a threshold determination of whether the defendant's conduct actually violated the law, we think, is proper. I mean, magistrates are competent. They're qualified to do so. And if there's any reason to doubt what the magistrate has done, there's certainly recourse to involve the district court in that process. A defendant can object, and then the district court has to referee and resolve that dispute. Isn't it true that magistrate judges preside over preliminary hearings all the time? Yes, Your Honor. And find probable cause to believe that the defendant committed the crime charge? Absolutely, Your Honor. So what difference would it make? I mean, what sense would it make to say that a magistrate judge on Monday could make the probable cause finding, but then on Tuesday couldn't find that there's a factual basis for the plea? That's exactly one of the points, Your Honor. We don't think there is a justification for drawing a line in that location. We think that magistrates are fully competent and qualified to apply law to fact. And what the job under Rule 11F ---- This is all with the consent of the defendant, right? Yes, Your Honor. So if the defendant or the counsel had some reservation about the competency of the magistrate, there's no requirement to consent? Absolutely, Your Honor. They can insist on having the judge take the plea. Absolutely. That is yet another one of the safeguards. So there's the threshold consent issue, and then there's also the right to object and bring the issue to the district court's attention for resolution. Well, you see, in this case, if we agree with you what Judge McNamee meant when he said he conducted a de novo review, do we have to decide whether de novo review is necessary or not? In other words, he did it, so certainly, you know, it's sufficient in this case. Do we have to decide whether it has to be done? I think that relates to Judge Wardlaw's question earlier, which I apologize for not completing my answer to. I think the answer, Your Honor, is do you have to? No. I mean, I think the Court has discretion. Would we urge the Court to do so? Yes, because as we tried to point out in our brief, I think that the panel decision has created some degree of confusion over what the responsibilities are in the future. That is to say, in the absence of an objection, does the panel decision mean that there must be de novo review in every case? And that's really what was so troublesome to the government and what caused us to support, in our view, the limited view of rehearing in this case, because of whether de novo review is required is something that is really of critical importance on a prospective basis. And so we think that the panel decision has been withdrawn. That's true, Your Honor. And, you know, the Court could, I guess, adopt, you know, reserve the question. I guess our perspective, the government's perspective, is it's important to put this issue to rest. This case presents it. And we would urge the Court, certainly you have discretion, but we would urge the Court to say that even though Judge McNamara may have done it here, he did it as an exercise of grace, if you will. He wasn't under legal compulsion, because neither the statute nor Article III obligated him to conduct that review. Am I correct? Counsel? Yes, Your Honor. This is Judge Kleinfeld. We had a case called Remsing. It said, unless the parties stipulate otherwise, a threshold requirement for de novo determination is that the district court review a tape recording or a transcript of the relevant portions of the proceedings before the magistrate. My thought when I was a district judge was that I can't get a transcript in time to review the transcript, and if I have to listen to the tape, I might as well just do the, that was the suppression hearing case, do the suppression hearing myself, but I'll take the same amount of time. Is that still the law of the circuit? And if we leave this in place, does it mean that the district judge has to review a tape recording as a practical matter? Yes, Your Honor. I'm not quite, I'm not specifically familiar with Remsing. I am familiar with, there's earlier decisions to the very same effect about either the transcript or the tape recording. Moran, I think it is. Yes, Your Honor, opinion by Judge Kennedy. So, yes, I do think that is the current state of the law, and I do think that as a practical matter, and as we tried to point out in our brief, if that is the situation that is confronting the district court judges, there has been some expression of reservation by those judges as to, exactly as Your Honor pointed out, it might just be simpler and easier for them to do the colloquies themselves. And I think it would be truly unfortunate, I think, to have a decision where what the court holds is that this is a permissible practice, it's legal under the statute and it's permissible under Article III, yet in practical consequence, the district court judges are reluctant to avail themselves of the practice and of the procedure because of these concerns about the complexity and the burdens and the delay associated with having to listen to the tape recording. And that is a view that has been expressed to the various components of the government, and that has motivated our position here. Counsel, am I correct that once the magistrate judge has conducted the plea colloquy, then the district judge enters the final judgment of conviction? That was the procedure in this case, yes, Your Honor. Right. And so whether or not Rule 11 was properly followed as to whether there was a proper predicate for a judgment of conviction is all before the magistrate judge? Yes, Your Honor. And so if there is no de novo review and there is no tape made, it's your position that unless there is some objection to what the magistrate judge does, then the district court enters the final judgment of conviction? Yes, Your Honor. And there is an appeal from that? Yes. And frequently what happens in the colloquy is the subject of that appeal. Yes. We get thousands of those, is that correct? Yes. I'm sure you do. So the appeal would go directly to us if the defendant were to have a change of heart, as sometimes happens, or decides that he wants to appeal from the sentence.  Or the judgment. And the district court would never, in your view, unless there was an objection, would never have looked to see whether there was a factual judgment. Not quite, Your Honor. I agree with most of what you said. And this gets back to Judge Fletcher's question in my response on the Rule 11f point. And just again, to recapitulate, if there's some reason to disagree with the magistrate's finding of a factual basis or anything, there's a right to object and bring it to the district court's attention. But even in the absence of an objection, the district court is, for all practical purposes, is going to have to make the Rule 11f finding in connection with sentencing because the court's going to have to review the pre-sentence report. And as the advisory committee notes to Rule 11 point out, that is one way that is a very common way for the district court to satisfy itself that there is a factual basis for the plea. And the PSR is commonly reviewed. Now, if, as the panel decision pointed out, if the PSR raises some specter of doubt as to whether or not there is a factual basis for the plea, the district court does have ample tools at its disposal, including particularly Rule 32e, a motion to withdraw the plea. And I would say to you, but this raises another question now. What Chief Judge Crowe referred to as the thousands of cases that come up is to the sufficiency of a Rule 11 call of plea taken by a district judge. Now, if the plea is taken by a magistrate judge and there's no objection made by a party to the district court, is it still reviewable on appeal to this Court or not? I believe it would be. One caveat I do want to point out is that, as the Court well knows, especially in these fast-track cases, there are very often and very frequently appeal waivers. So a lot of these cases, there is – there would be no appellate review because of the appeal waiver. But, yes, absent the appeal waiver, the issue, I think, would be reviewable on appeal. Is there a case law that says if a party doesn't object to a magistrate's report to the district court, that objection is waived and can't be waived on appeal? I have to confess, Your Honor. I'm not aware specifically if there's Ninth Circuit law. I would point out to the Court the Supreme Court's decision in Thomas v. Arnn. In that case, what the Supreme Court held was that it was permissible for the Sixth Circuit to adopt a rule in the exercise of its supervisory authority that held that if a party fails to file timely objections to an R&R, it has then waived, not forfeited, but outright waived its right to raise that issue on appeal. And the Supreme Court considered the validity of that rule and held that it was a proper exercise of supervisory authority. And furthermore, the Court held that, as with any rule of supervisory authority, it may not conflict with the statute or the Constitution. And what the Court went on to say was that the rule did not conflict with Congress's intent in enacting 636, because, again, under the view expressed by Congress, de novo review is only triggered by the filing of an objection. And furthermore, the Court went on to consider the Article III question of whether the – that supervisory rule, which would cut the district court out of the process and even cut the court of appeals out of the process of review, whether that would violate Article III. And the Supreme Court held it would not. And this gets to one of the essential positions as to why we think that the delegation here satisfies the structural facet of Article III, and that is there is no affront to the separation of powers because Congress hasn't divested the judiciary of its power to conduct a de novo review sua sponte, as Judge McNamee did here, or as was in fact the case in Thomas v. Arnn. And so from an Article III perspective, the district court retains that authority to conduct a de novo review, so there is no affront to Article III. If there is no request for a de novo review, lay out what happens. The magistrate makes his determination. Yes. That's in a what, a findings recommendation? Yes. All right. What happens after that? If there is no request for de novo review, what is the norm? I think we can use this case as a model. What happened is there was no objection. Judge McNamee then received the R&R, and he entered an order upon that. And just by way of clarification to Judge Hawkins' question earlier, there was a specific written order of referral and consent in this case. It's lodged in our supplemental excerpts, pages 1 and 2. The district court will then enter a written order, as Judge McNamee did here. And what he actually said was there were no objections filed in the court having conducted de novo review, and then it said that it accepts the report and recommendation and it then accepted the, which included a recommendation on the guilty plea, and it accepted the plea. And because this was an 11E1C plea, the court then deferred acceptance of the plea agreement pending the preparation of the PSA. But from a constitutional standpoint. Yes. There would be no requirement that that clause about having conducted de novo review be included. Correct. That's absolutely, that's our position. And we think, again, Peretz as well, not only Thomas v. Arnn on the constitutional level, I think Peretz is even more on point. And I'd like to just take a minute and explain why I think Peretz is so dispositive on this issue. In Peretz, the Supreme Court actually quoted from Justice Kennedy's opinion for this court in the Peacock case, where Justice Kennedy had written that to the extent that de novo review is required to satisfy the Constitution, it need only be exercised if requested by the parties. And this gets back to the point of Thomas v. Arnn. Nothing in the statute precludes the judiciary. Again, from an Article III perspective, there's no attempt by Congress to interfere with the judiciary's authority to conduct that review. And what the Supreme Court said, as long as the opportunity for that review, that power is still vested in the Article III district court, there is no constitutional objection. And what the Court went on to say was that if a defendant in a future case requests such review, nothing in the statute precludes the court from affording it. Now, on the particular facts of Peretz, it was a referral to the magistrate to conduct voir dire. There was no objection and there was no de novo review conducted by the district court, yet the Supreme Court upheld the delegation. And it was precisely for the reasons that we've just said that the Court said there was no Article III problem because the Court could have done de novo review even though they did not do it in fact. Counsel, there's a reference in footnote 7 of the panel opinion to the, at least the implication that other circuits have required de novo review. What's the government's position on that? With all due respect to the panel decision, we take a slightly different approach, a slightly different reading to what those cases stand for. In our view, none of the circuits, they've all used the word reviewable or subject to review. We don't believe, I will acknowledge there is, as with the panel decision in this case, I believe the decision of, it may have been the Eighth Circuit in Torres, but one of the other courts of appeals, there was a little bit of inconsistency in the language. But I think on balance, the opinion is best read and most fairly read as saying reviewable is the standard for Article III. I notice there's a footnote 7, remarkably, in the Dees case written by Judge Higginbotham, which seems to suggest that even though the Act does not express the require de novo review, the only constitutional requirement is that it be available if the party so requires. So that's the construction the government is arguing. Correct. Reviewable under Article III. And again, because you read these, though, in the text, it sounds like they think that under the statute it's required, and then the footnote says it's not a constitutional requirement. I confess, I don't recall, if that's what the Dees decision said, Your Honor, I guess I would point the Court strenuously to Thomas v. Arnn, where the Supreme Court, again, reviewed the legislative history, the language of the statute, and was emphatic in suggesting that 636 does not require any de novo review as a matter of legislative intent, absent the filing of an objection. Would it satisfy the government if the last line of the footnote, the words the availability of, were inserted before de novo review? Your footnote 7 you're referring to? I'm sorry. Would it satisfy the government?   We agree with the Fifth Amendment. We agree with the Fifth Amendment. The Fifth Amendment circuits that de novo review by the district court is a crucial factor, blah, blah, blah, blah. It said the availability upon request of de novo review. And that's essentially what we suggested in our brief. That's your position. Yeah. We think that, exactly, that availability is the key, because the district courts don't have any legal obligation, and because of the corresponding burdens of imposing a de novo review requirement in every case. It's availability that is, again, from the Article III perspective, and as a matter of legislative intent. I just want to follow up on the procedure in Arizona. Yes. So, after the district court judge written supporter accepts the plea, then GSR is prepared, comes back, and the district court judge is the one who actually sends it. Yes. That is not being delegated. No. All right. In felony cases, that's correct. That's not being delegated. Right. So, at that point, if there was something that came up in the PSR, a form of fair and just basis for withdrawing the plea, then the district court would have that in front of them. Absolutely. And that's another one of the safeguards that I was referring to in response to Judge Fletcher's question about why the Rule 11-F issued there are adequate safeguards. And, in fact, the facts of this case are a perfect illustration, because in response to the presense report, defense counsel filed a motion to withdraw his guilty plea because he said there was new information that cast doubt on whether or not he had actually committed a crime because of the LPR issue. And that involved the district court in the process. Now, the district court ultimately ruled against the defendant, but what it shows is that the safeguards that are built into the system, they work. And that's exactly what happened here. And the district court has tools at its disposal, the Rule 32-E being the most  And ultimately, you know, our position is we have to trust the system. That is to say, we have to believe that magistrates are going to conscientiously discharge their obligations on the Rule 11-F and on Rule 11 generally. And, of course, even the most conscientious magistrate, like all of us, is going to make mistakes. And so at that point, we have to trust the district – the defense counsel to step in and file an appropriate objection. And then at that point, we have to trust the district court judges that they're going to resolve the issue as Judge McNamee did here, in a thoughtful and objective manner. And I think if you proceed from that premise, there's really – I would suggest it strengthens rather than dilutes the Rule 11-F requirement because of each of these procedural protections that are built in. Now, if the Court has no further questions on the merits of the delegation question, there is one procedural issue, which is off to the side, that I'd like to just take a moment to address. And that relates to the Buchanan decision. In the Buchanan case, which was cited by the panel in footnote 2, stands for the proposition that when a district court gives an erroneous oral advisement of appellate rights at a – at sentencing, and that – that oral advisement conflicts with an appeal waiver in a plea agreement, it is the oral pronouncement that controls. And what the panel said in Buchanan was that we need to give effect to the oral pronouncement because we have to protect the defendant's reasonable expectations. Now, with all due respect to the – the panel in Buchanan, Your Honor, we think that the case was wrongly decided and should be revisited. And let me just take a moment to explain why – Let me just ask you, the government agreed on the original argument before our court that there was a right to appeal. And so you're now trying to change that position? With all due respect, I don't think we did, Your Honor. Let me just explain why. In our view, as I read the government's brief, for which I was not the counsel for the government before the panel, what we said is that Buchanan applies when there's an erroneous oral advisement. But here, Judge McNamee's advisement was not erroneous, and we tried to distinguish it for this reason. What Judge McNamee said at sentencing was you have an appeal waiver and you've waived your right to raise any issues consistent with the language of the appeal waiver. But Judge McNamee found that the motion to withdraw the guilty plea in this case was a unique aspect and was not actually covered by the appeal waiver. So Judge McNamee found as to that limited issue, you can raise whether there was an abuse of discretion in denying the motion to withdraw the plea. So what the government said in its brief was, yes, you can raise the motion to withdraw the plea, but Buchanan doesn't really apply and you have no right to raise any issues about delegation because of the appeal waiver. So as I understand it, that was the government's position, and I think we're being consistent rather than inconsistent in terms of how we view Buchanan. Let me just briefly address the Buchanan point in a little bit more detail. Since Buchanan was decided, the first, sixth, and eighth circuits have squarely criticized the decision and have actually declined to follow it, pointing out at least two flaws in the decision. The first flaw identified is that Buchanan essentially allows the district court judge to unilaterally rewrite the terms of a plea agreement. If you give effect to the oral pronouncement, you're blue-penciling the plea agreement. And the second deficiency was that when you view the issue from the perspective of reasonable expectations, the plea agreement is offered in – is most often entered into months before the oral advisement. And so if anything, the defendant had no expectation of a right to appeal, so the plaintiff influenced the expectations in that regard. Now, the consequence of – The argument makes absolutely no sense to me. Let me try to – let me try to explain why. In front of us, it says real appearance before an Article III judge, and the judge says, now, you have a right to appeal X. Correct. You're supposed to say, wait a minute, I've got this plea agreement, Your Honor. I think you're wrong. Well, I think so. If you're viewing it from the perspective of what the defendant's expectations are, several months earlier, he had a firm understanding from reviewing the plea agreement with his counsel that there was going to be no appeal. If there was some confusion raised, perhaps it's incumbent upon his counsel to clarify. Even for the government does not object. I'm sorry? Even for the government does not object. Well, that's a harder case, Your Honor. Certainly – but again, in this case, the issue shouldn't have been raised at all on appeal because of the appeal waiver, and there was an acknowledgement of the appeal waiver. In the government's brief on appeal, we did raise the appeal waiver. I recognize the failure to object, and that was one of the particular facts of Buchanan. In subsequent cases, the Court has sort of limited Buchanan to that particular scenario, although, again, the breadth and reach of Buchanan, I think, is a little bit up in the air. But even if the Court is troubled by the second rationale, certainly the first rationale, this unilateral rewriting of the plea agreement, we think is of concern. Now, let me say, if the Court, the embanked Court, were to revisit the Buchanan decision, one consequence – and, of course, accept the government's proposition – one consequence would be that it would move the delegation issue now before the Court. We do not want that to happen. We're not asking that to be the outcome. I think it would be – no. But I think there's a reason – there's a good reason why, Your Honor, and here's what it is. There's a recent decision in this Court that holds that the government is entitled to waive the waiver. That is to say, the government can waive its any reliance on an appeal waiver clause, and that would permit the Court to consider the merits of the issue. And so what we're trying to do is just analytically to clarify that the issue is we think it's before the embanked Court and we think the embanked Court should reach it for the reasons that we've pointed out. But the rationale for getting there is not that there was an erroneous oral advisement because it wasn't erroneous. It was in accordance with the Court's case law. It was a limited right of appeal. The reason – Just where did the government waive the waiver in this case? Right now. Right now. Right now. Well, we – But why do you need to waive the waiver if the district court directly advised the defendant that the denial of his motion to withdraw the waiver was not within the clause of the waiver? We don't. It's only on the assumption that Buchanan is going to be extended beyond what we think it should be. In other words, technically speaking, you could probably distinguish Buchanan. That's what the government tried to do before the panel, but the panel didn't accept that. And so to the extent you're going to read Buchanan more broadly to cover the situation here where there was no erroneous advisement, then in order to avoid mooting the issue, we're willing to waive the waiver. Is that – Well, I just don't see how Buchanan even applies. It doesn't. It's not an erroneous advisement. And in fact, the government's position is that what the district court said was that this particular ruling was outside the scope of the waiver. I don't know why we're getting into waiver as a way of doing it. You don't. It's only because the reason is if the panel extended Buchanan, the panel applied Buchanan here, even though, as Your Honor has pointed out, the case is distinguishable. And so to the extent that the Court is going to read Buchanan more broadly, we think it's wrong. I mean, we think the decision is inconsistent. I see my time is up, if I may just answer the question. Change the sentence. We think the decision was wrong when we decided. But if you're going to read it more broadly so as to encompass the facts of this case, we think the decision should be overruled, but you don't have to move the issue because we are willing here today to waive the waiver. We want the Court to reach the merits. May I just ask you an administrative question? Yes, Your Honor. There is, at least arguably, a split within the circuits on the question of review. Does the – do you know whether the Justice Department has any intention to take this to the Supreme Court? Your Honor, again – It's floating around on that. Well, as I – in response to Judge O'Scanlan's question, we think that the decisions are reconcilable. We think they're consistent. To the extent there is a circuit split, I would say on behalf of the Justice Department, we'll wait and see what the Court does here. Okay. If the split is of sufficient concern, then we'll have to make a determination at that point. Thank you. Thank you, Your Honors. Your Honor, on the subjective appealability, all the government has is a contractual right that the defendant will not appeal. Any contractual right can be waived. At the district court level, Judge McNamee said this was an interesting question. He said that several – regarding whether the deportation adjusts status. It was an interesting question. The government agreed with that. They agreed that the appeal should be taken. That was a waiver of their contractual right. Any right under a contract can be waived. It was waived in the district court. When we got up to the panel, the government again waived it, confirmed their waiver, and this is the first we're hearing about appealability. In response to your question, Your Honor, normally a case under fast track does not even go to the district court. It's given an M number. The government files an information, the informal charge, and that's how the magistrate is assigned. After the plea proceeding is completely done and there's findings and recommendations, then it's given a CR number and it's assigned to a district judge. So in the vast majority of these cases, there is no assignment by a district judge because there is no district judge. It's simply at the magistrate's level based upon the government's filing of an information. The district judge comes after the plea proceeding is concluded. Your Honor, one aspect of the change of plea, which we feel needs to be – is required to be reviewed, de novo, is the factual basis. At the panel level, they gave us a good argument, some support ruling on that. But under Santabello, the Supreme Court has said that Rule 11 makes clear the sentencing judge, the sentencing judge must develop on the record the factual basis for the plea. That is incorporated in the advisory committee notes to Rule 11, the same thing that the sentencing judge. A magistrate is not a sentencing judge. And in your case of United States v. Albur, this Court ruled that Rule 11F requires the district court, district court, to satisfy itself that there is a factual basis for the plea. And in Albur, there was a question whether there was or was not a factual basis. We submit that simply because the Supreme Court said there must be a de novo review of the factual basis, there must be a de novo review of the factual basis. It's as simple as that. Thank you very much. There's no further questions. The matter just argued is submitted to the Court for decision, and the Court stands adjourned. Thank you very much.
judges: Schroeder, B.fletcher, O'scannlain, Tg Nelson, Kleinfeld, Hawkins, Tashima, Silverman, Wardlaw, Gould, Rawlinson